Thank you Judge Rundell, and may it please the Court, Jeffrey Forney for Appellants. Secretary, Department of Homeland Security, I request three minutes for rebuttal. That's granted. Thank you. I am in receipt of the Court's letter directed from the Clerk's Office to address two points related to this case. We just wanted to make sure you were alerted. They're not, you know, the only issues, but we just... Certainly. There'll be more. I'll be happy to answer any questions, but let me start with those two points specifically, since they were brought to the attention of the parties. The Church and Alan Carr both lack Article 3 standing for want of redressability. They seek an I-360 petition to employ Alan Carr legally in the United States, and relatedly so that he can adjust his status to gain lawful permanent residence status here. The day before he would get a visa such as this, he's removable, correct? He's currently removable, yes. If he gets a visa, is he then removable? Yes. Immediately? He has a visa in his hand, and they can send him out of the country? Let me just clarify some terminology. The I-360, if approved, never grants a person's status in the United States. That's clear, but can they send him out of the country if he has that petition in his hand? Legally, yes. If, of course, he would be put into removal proceedings, and if through due course the immigration judge determined under the facts and circumstances and the law that he was removable, that would be the case. So you're saying the visa is a nullity? With respect to whether he has lawful status in the United States, yes. The effective party regulation referenced in the clerk's letter, 8 CFR 103.3A1, has no bearing on this case regarding standing Article III or otherwise, and I respectfully request that I direct the Court's attention to Consolidated Edison 131 Fed 3rd 1475 out of the Federal Circuit. It addresses a basic point of administrative law that agencies are, of course, not bound by Article III, and they may accept interveners, parties to appear before them in proceedings that may not be able to appear in Article III courts because of constitutional standing issues. But you're applying it the other way. You want to say that he's not permitted to have standing? No, I'm saying it's irrelevant. Well, but does it really matter? Doesn't Shalom have standing? So under Rumsfeld v. Forum for Academic and Institutional Rights, this case is properly enforced, correct? No, because of warrant of addressability. There's nothing that the approved I-360 would give the Church in this case, absolutely nothing. It could not employ Allen Court legally. He cannot remain in the United States legally through adjustment of status. He is statutorily precluded. Just to be clear, it was the government that was pointing us to the regulation in various cases on standing in administrative appeals. So is it your position at this point that those are not relevant for us to consider constitutional standing? The regulations are relevant for constitutional standing purposes, correct. But the injury would be redressed. In other words, he would get the visa if we rule that the regulations are ultraviolet. And he would, as it currently stands, he would not get the visa. So aren't we, in effect, redressing his injury? No, because he seeks to be employed lawfully in the United States and, relatedly, to adjust his status. He is statutorily precluded from receiving both of those. Why isn't that the government recharacterizing the relief that he seeks? What they say they are seeking is the grant of the I-360 petition. So what is the authority for us to go beyond what they say they're asking for and look to the ultimate question of eligibility for adjustment of status rather than eligibility for the petition to be granted? The Immigration and Nationality Act as a whole. It governs the entire process. It's a two-step process in this case. The I-360 is merely one step. And even if it were granted, an I-360 would grant, legally, no benefit or right to the church or to Alencor. I think we're talking a little bit about cross-purposes here. We know your position, I think. Could you move on to the issue of the regulations and the ultraviolet issue? Regarding the relationship to the regulation to 1255K, this provision is essentially irrelevant for three reasons, at least with regard to the operation of this regulation. So you don't argue it's ambiguous, it's just irrelevant? Not 1255K, no. The ambiguity stems from the INA 101-827, which is the statutory provision that creates the Special Immigrant Religious Worker Program. And the term that is ambiguous in this case is carrying on. And how so? Well, first, it is not defined in the statute. We don't see the term defined anywhere in the definition section, which is INA 101 generally. Give me an example of a different way of defining, thinking about, looking at, carrying on in this context. What's ambiguous about that phrase? Well, the only condition that Congress imposed in this program was a two-year temporal condition. The two years must be, the alien must work for two years carrying on his or her occupation or vocation. Outside of that temporal limitation, there's no other condition set, and the term is unclear. Is the alien required to work lawfully in the United States, if in the United States? Are they required to be paid for carrying on their profession? All this is left unclear. Well, but there's lots of things unclear. You know, are they supposed to wear a uniform when they're carrying on? I mean, if it were that it's full-time employment, that would be one thing, but that's a necessary characteristic of carrying on, you know, how, carrying on how, as a full-time employment. But, you know, there's lots of things that aren't stated in terms of carrying on. How do you contend? Well, the other point I'd make is that carrying on is used in the framework of the statute twice. Carrying on before is only for the purpose of carrying on. So after you arrive, it's the purpose of carrying on, and in the past it's carrying on. But your supposed addition would really only relate to the has-been carrying on. How can we say that what you're suggesting applies to carrying on when it really doesn't work with both of the uses of carrying on? Do you understand what I'm saying? No, I'm sorry, I don't. Okay. Seeks to enter the United States solely for the purpose of carrying on. So that would be prospective, all right? Carrying on. Certainly. Okay. Whereas has-been carrying on. Now, your purported definite, my idea of full-time, would work with both of those for the purpose of carrying on. Full-time employment, has-been carrying on, full-time employment. But your definition of an authorized legal status doesn't really work. Oh, it works completely. I'm glad you brought up this example because if we're talking in temporal terms, of course the alien would intend to come to the United States to obtain lawful status to carry on in the future their occupation or vocation. But you can't impose a requirement. You are not imposing a requirement for the future, are we? Oh, certainly. They are required to carry on their vocation. They can't come to the United States to work as a janitor. Okay, but that has nothing to do with lawful or unlawful immigration status. Well, certainly, but I think my point, and I believe your point as well, is that there must be some kind of nexus to the terms at issue in the statute. Exactly. And certainly, having lawful employment, the terms and conditions of your employment have to do with and relate to carrying on. But that has nothing to do with authorization from an immigration standpoint. Well, certainly, the first provision that Your Honor mentions does because the purpose of having an I-360 granted and approved is so that you can move to the final step to be employed lawfully in the United States. That's what I don't get about carrying on. What other definition or meaning of carrying on could there be other than engaging in? What am I missing here? Carrying on such vocation, professional work, or other work. What is ambiguous about carrying on? You focused on that, and I don't get it. Well, none of the connotations of that term, other than the temporal limitation of commerce implied, are defined. They're left silent. Therefore, under basic principles of administrative law under Chevron, that's essentially delegated to the agency to figure out. So because there's no temporal definition or refinement? Well, there is a temporal definition of refinement, but that's the only refinement that Congress provides. Okay, the two years. I would like to get the government's view on whether the question of whether the regulation is rendering parts of 1255K superfluous. Is that something that we take account of in the first part of our Chevron analysis, or is that a part two construction consideration? Both. It certainly goes to the ambiguity, and that, my understanding, is where the appellees have pushed the point. But Congress knows how to say it can, and as the D.C. Circuit has certainly read it, is really irrelevant in the context when Congress grants to an administrative agency a program. It's expected that they're going to fill in many of the details. And if there is some overlap, it's simply left to the agency to resolve. There's certainly no prohibition expressly stated in any of the statutory provisions that are relevant here, or any other provision in the INA that I know of that would expressly preclude what the agency has done here. Is there actually a conflict, or could you give us any scenario where the regulation requiring lawful work for those two years would not be inconsistent with 1255K? Yes. Well, first, just to make clear, 1255K in no way will save Alan Corr in this case. He's worked far more than 180 days, so this statute would not save him in any sense. But more to your point, there can be several cases in which 1255K would still operate and the regulation would operate in conjunction with it. For example, any case where the alien has less than 180 days of unauthorized work before or after the two years immediately preceding the filing of the I-360. So let's suppose there was authorized work. Let's say an alien arrived in the United States as a visitor, for example, and worked for the church unlawfully for 50 days, and then was granted some other status, like temporary protected status, for example, which entails employment authorization, and proceeded to continue to work for the church under TPS in that status. That would be authorized status, and he could gain the two years of required employment being authorized to satisfy the regulation. And then if the 360 was approved, they could adjust status because they had only had unauthorized work for 50 days prior to the two years of gaining the authorized work. And I see I'm out of time. I'm going to give you another two minutes. The whole issue of the congressional directive in 2008 with respect to fraud, that really was directed at sub-2 and sub-3 of this provision, not having to do with the minister provision. And how does that fraud relate to immigration status as compared to relating to people's representation  How can you say that that directive from Congress justifies the imposition here? I could have been more clear in the briefs, and I do apologize, but we do need to look at the agency's justification, and that did appear explicitly at 72 Federal Register 20447-48. That was the preamble to the notice proposed for remaking. But it says nothing about immigration status, does it? It's really directed to the representations regarding work experience, position, et cetera. Exactly. So there are two justifications. One is to mitigate and prevent fraud under this congressional directive. But secondly, it was an evidentiary rule. It was a bright-line rule that was laid down for ease of administration. In other words, if a person in the United States is employed legally in accordance with work authorization, they will likely have documentation that will readily evidence their work in the vocation or occupation. For example, tax filings or I-9 documents that are also required by separate provision of the statute. So that those documents would be readily available because the person had gained their experience through authorized work. That allows for the agency to easily confirm that that work authorization. But ease of administration can't trump the intent of the statute. I mean, a lot of things could say, okay, we're going to make this easy, and categorically impose a requirement that then doesn't have a real rationale. Right. And here the fraud doesn't seem to have a real rationale. How does it? Well, it's interesting that Your Honor mentions that because my understanding is that the appellees have never, at any one point, challenged procedurally this rule. They've never said that the agency hasn't proffered a proper justification, such that it violated some of the underlying principles that the agency must engage in reasoned decision-making. Yeah, but we're just at step two, though, figuring out whether it's arbitrary. Right? That's where we are. We're at step two. Right. And Your Honor's correct. You have to focus on the statute at that point. As far as the agency's rationale is concerned, I mean, that would have to go whether there was reasoned decision-making. Right, but it's still asking about the fraud aspect. How are you saying that this is reasonably related to the fraud issue, this issue of, okay, you have to have been here in lawful immigration status for two years. Well, it reconciles and takes into account relevant provisions of the INA. Congress has set forth an underlying principle in the INA that there should not be unauthorized work in the United States, period. There is the Immigration Reform and Control Act of 1986 set forth that paradigm without question. But as to special immigration religious workers in 455K, they specifically contemplate an exception to that. So how, particularly with this act that applied only to subsections two and three, how can you argue that that justifies its application to subsection one? Well, I'm not so sure that the congressional qualification is so far reaching as Your Honor suggests. If we look at 1255K, the introductory clause reads, an alien who is eligible to receive an immigrant visa under paragraphs, ellipsis, and so forth. In other words, Congress had an introductory provision that said that the agency would make independent conditions and qualifications about the adjudication of immigrant visa petitions before we even get to the second step of adjustment of status, which is the limitation of 1255K. It concerns adjustment of status, not the adjudication of immigrant visa petitions, which is what is at issue here. But if the alien is not eligible for adjustment or change of status under 1255K as a result of unauthorized work, why would 1255K go on to talk about a cap of 180 days on the unauthorized work? If the alien surmounted the first step in the process and then could still qualify under 245A with the saving clause under 245K, then the alien would adjust status. Which assumes they engaged in unauthorized work and that that did not preclude their eligibility for adjustment of status. And there are cases, which I've mentioned, where aliens would qualify under 245K, would benefit from that provision if the unauthorized work was less than 180 days and took place before the two years that's mentioned in 101A27. If we don't find the ambiguity that you say persists in the statute, where does that leave you? Well, obviously if the court determines that the statute is unambiguous, and in your reading of the statute the lack of ambiguity necessitates the reading that the appellees venture in this case, then obviously step one settles the issue. But obviously if the government has maintained that there's just, we don't read that there is a clear determination here, carrying on is not defined. There's certainly no common law, a subtle common law understanding of the term that the appellees can point to. And under subtle principles of administrative law, for example, Hearst Publishing Supreme Court said back in the 40s, if there's no common law, subtle meaning that attaches to a statutory term and the statute has been delegated to an agency, expect that the agency will work that out. So what then would be the remedy? In other words, other than the two years of lawful employment from the government's perspective, is there any other criterion that Allan Card hasn't satisfied so that remand to the agency would be appropriate as we held in Sultane, rather than simply affirming the decision below? Okay. I'm not sure I understand the question. Your Honor is asking about the appropriate remedy if you were to find agency error. Would we simply be affirming or is there any reason to be remanding for further consideration, for example, further investigation or consideration of other criteria for eligibility for the I-360 petition? Well, if the court finds that the regulation is ultra-various, there wouldn't necessarily be a remand to act in accordance with the court's legal determination. But it's interesting in this case that under no set of circumstances can Allan Card benefit from the court's ruling because by statute he can't adjust status because he has unauthorized employment for more than 180 days and he has never maintained lawful nonimmigrant status. So both of those conditions not having been fulfilled, he is precluded. From the adjustment? From the adjustment. All right, thank you. We'll hear from you on rebuttal. May it please the Court, Mr. Forney? My name is William Stock. I represent Shillam Pentecostal Church as well as Pastor Carlos Allan Card. I'm representing both Pastor Allan Card and the church, so I would ask that I have about four minutes to address the standing issue for Pastor Allan Card and save the remainder of my time to address the other issues that have arisen. As you wish. Thank you. With respect to the standing issue, we know first that the government had waived the prudential standing issue under the APA and that really the only issue is the constitutional standing issue. And this goes to a broader question of when and whether beneficiaries of immigrant visa petitions can come into court when they believe that the agency has revoked that petition in some way that would harm them, perhaps outside of the question of adjustment of status on the basis of that particular immigrant visa petition. Well, he's denied his petition. Correct. And automatically, if we affirm, he would be granted his petition? And that goes a little bit to Judge Krause's question of kind of the next step. Because the only reason he was denied was this regulation, he would then be granted the petition? Is that correct? It wouldn't be automatic, Your Honor, because it would be a second proceeding under Section 245. As Mr. Forey pointed out, if it was in a removal proceeding, that application would be a form of relief from the removal. So that if the immigration judge were to grant it on the basis of the petition, he would be allowed to remain. Okay. But if the immigration judge didn't grant it. But even the opportunity to apply is foreclosed once there's no immigrant visa petition on which to base the Section 245 adjustment. And you're saying in response to my question, yesterday he didn't have the visa, he's removable, today he does have the visa? He's removable but now has an application for relief from removal. Has the opportunity. Potentially. Exactly. So the potential benefit answers the redressability issue? I believe so, Your Honor, because without the opportunity even to apply, one never can apply. Okay. And if I may, the government's argument proves a bit too much. If we think of the list of, I know right after us is a proceeding that is a review of a removal order. And under Section 1252, the Section 245 question is not even reviewable before this court, right? So there are steps, the government could come in under their argument any time an immigrant visa petition was denied and say, well, Your Honors, it's discretionary whether we ever grant Step 2, so don't bother yourself with Step 1. Because under, you know, we'll just come back in here under Section 1252 and say it's a discretionary decision that Your Honors can't review. And it strikes me that that's proving then that the government could act arbitrarily at Step 1 just because under Step 2, Congress has seen fit to insulate their decision from review. I thought his position was slightly different and maybe I misunderstood. I thought it was that at the next step he couldn't get redress, he was precluded, and that because it was precluded, that's why whatever happened at this stage didn't satisfy the redressability factor standard. That certainly is his position. And I would submit that in 383 pages of administrative record that relates to the I-360 that the government produced as its basis for their decision in this case, there's precisely two paragraphs on one page which are the factual basis for the assertions Mr. Forney is making today. I'm not prepared to litigate a Section 245 application for Pastor Alencar that's not before this court, not before this service. And, again, it is really, you know, the opportunity to get to Step 2 is all we're seeking. So you do not concede then that he is ineligible for adjustment of status today? Correct, Your Honor. I would say that there are many provisions and ways, and Amici pointed some of the ways out, that Pastor Alencar may be ultimately able to redress his status in the United States, both through administrative actions of various kinds as well as through a visa application overseas. Mr. Forney's brief would argue on that point that, well, certainly it's true he could go overseas, but he would have to be out for 10 years, and the church might go away, and he might stop being a pastor, and there are lots of contingencies. But I would argue there are lots of contingencies on the positive side as well, applications that he could make for relief that would allow him to ultimately proceed with a Section 245 adjustment, either before the service or before an immigration judge. I wasn't totally convinced by the argument that the two-year prohibition is necessarily inconsistent with the 180 days, but we sent you a letter inquiring as to the lead-in to the adjustment of status provision. Do you believe that that lead-in is applicable such that it's notwithstanding this anything contained in or notwithstanding his unauthorized status? I'll be specific. Correct, Your Honor. Section 245A provides that certain people may apply for adjustment of status. Section 242C7 says that certain of those people are then precluded from adjustment of status, unauthorized employment and failure to maintain status. And Section 245K makes an exception to the exception, saying that it doesn't apply. So, yes, and our point would be that given that whole statutory scheme, it was inconsistent for the government to come out with a regulation which, you know, if a pastor came into the United States, began serving his or her church, and was then later adjusted or changed at a temporary status, for example, finished the two years within a lawful status, that even though Section 245K would allow that pastor to have adjusted status if there was an approved visa petition, the service is essentially writing Section 245K out of the statute for that person by saying, well, we never get you to Section 245A because we've denied your visa petition. But they've also identified scenarios where the two would not be inconsistent. Certainly that's true, but we believe that as we're making a facial challenge here, the government would have to show that there was sort of any circumstance, that there's no circumstance where it would be appropriate to grant the 360 but deny the 245. There certainly may be many of those kinds of circumstances. The pastor could be a criminal. The pastor could have a suspected terrorism tie. There are 40 different grounds of inadmissibility to the United States, none of which are adjudicated at the petition stage, whether it's an immigrant petition for a religious worker, another worker, a family member, et cetera. The government seems to concede, at least in its briefs, that there is the opportunity for adjustment of status or to apply for an immigration visa 10 years down the road. So I recognize that you think there are other scenarios, such as Andy raised, that may apply. But just as to these 10 years, if all we're working with is the opportunity to apply 10 years from now, would that, for redressability, for constitutional standing purposes, be sufficient in your view? I believe it would. There are visa petitions in the family system, for example, where a conservative estimate is that it will take 20 to 30 years, 70 years for some nationalities, for those visa petitions to be able to sort of come to the front of the line and be eligible to immigrate. In the immigration system, people are willing to wait very long times for the opportunity to come to the United States. So the timeframes I have are for brother and sister petitions under the family-based system. The brother or sister of a U.S. citizen may have to wait 20 or 30 years for the opportunity to come into the United States. If the brother or sister is of a Mexican national, it may be closer to 70 years. All right. Want to address the Chevron? Certainly, Your Honor. Our position is that carrying on is an unambiguous term, specifically as it relates to carrying on of a religious vocation, that Congress chose those words because the word employment doesn't necessarily apply to a Buddhist monk or a Catholic nun who may not receive a compensation for his or her services. It is interesting that there is, in fact, no statutory definition of carrying on, but there is also a definition section that is specific to this religious worker provision. It's in Section 204.5M5. That provision does not have a definition of carrying on. So it strikes me that if the government's position is that this is an ambiguous phrase, they might have taken the trouble to at least set forth what their interpretation of carrying on was. Well, except in the case law, we talked about appropriate agencies. There wasn't a definition of appropriate agencies either. I mean, I don't know that that is. . . I believe it certainly points to the fact that, as I believe from the questioning and as our position is, that carrying on is a straightforward term, that it isn't susceptible to alternative meanings, and that indeed to take carrying on and stretch it to say that because Congress put in a temporal limitation of two years, Congress knew how to say that they wanted limitations on that carrying on. They said they wanted it to be carrying on for two years. They didn't say carrying on for two years in the United States. They didn't say carrying on for two years in a particular religious position. I think that Congress assumed that the phrase carrying on wasn't in fact straightforward when applied to the idea of how one is a religious worker. What if the regulation required full-time employment? The regulation does require employment in excess of 35 hours per week. I would argue, and it's not before the court at this point, that that is an open question as to whether the entire structure of this regulation, which was written in order to allegedly combat fraud, may not be susceptible to further challenges in a case where the government argued that a Catholic nun or a Buddhist monk was not employed on a full-time basis because he or she did not have pay stubs and W-2s and tax filings. Going back to Judge Frendel's question to the government about the first use of carrying on, the statute applies to special immigrants who seek to enter the U.S. solely for the purpose of carrying on this vocation, and then the provision that's at issue here is referring back to the carrying on of such vocation. So isn't it the case that when we read what Congress was initially authorizing people to come in seeking to carry on that vocation, that we all understand what Congress intended at that point was for people to come and seek to work lawfully in that vocation? Correct. The visa petition would be the basis for status that allows the person to work without restriction for the religious denomination, perhaps a different religious denomination, perhaps even eventually to change occupations entirely. So why then, if we agree that that is the plain reading of the first reference to carrying on of the vocation, when we have the second reference back to such vocation, why aren't we, as a matter of just a plain reading of the statute, also importing there the understanding that it's lawful? I would agree. I believe the statutory assumption is that after the grant of permanent residence status, all employment in the United States is, by definition, lawful, because lawful permanent residence is defined as the ability to live and work in the United States until that status is taken away. But I would agree that Congress may not have felt the need to expressly say, they have said you have to be coming to be a permanent resident in order to carry on the religious vocation. And so to say then separately that you have to still be authorized to, it's redundant. At that point, you've become a permanent resident, so you are authorized to carry that on. But why isn't the reference back then to the carrying on of such vocation, why doesn't that include the concept of lawful work? Because the such vocation is, due to the structure of A27C, that coming to the U.S. to continue carrying on refers to both Subpart 1, Subpart 2, and Subpart 3. And so rather than enumerate three separate times that the requirement would be to have been doing either ministerial work or professional work or vocational work for those two prior years, Congress just said carrying on such religious work, meaning that a minister must be coming to be a minister, a professional must be coming to be a professional, and another worker must be coming to be another worker. For example, if Pastor Alan Carr had two years as a pastor and wanted to come to be a religious broadcaster, as one of the examples in the regulations, he would need two years as a religious broadcaster to qualify to be a religious broadcaster. So the reference to carrying on such vocation is meant to enact that idea that we want people who have been a pastor if they're immigrating solely to be a pastor. But not to include the concept of lawful work that you agree is inherent in the first use of the term carrying on. Correct. I think the statute says nothing about a requirement that those two years be in lawful immigration status or that they be entirely in lawful immigration status. What if we get to Step 2 of Chevron? I think then that's where Section 245K and the ability, the government's position that there's this absolute restriction on the ability to work in the United States and then get other relief under the Immigration and Nationality Act is misplaced. There are exceptions to that rule that are throughout the statute. And so those considerations have never been seen as part of the visa petition process. They've always been seen under eligibility for changes or adjustment of status rather than the visa petition itself. Why is our consideration of 1255K limited to Part 2? Isn't the law of the circuit under Bautista and Prestall that we consider all of the traditional tools of construction and that's been applied in a fairly broad way?  Or that we would consider the existence of Section 245K and this ability to adjust status in spite of minor violations of status in these specific employment-based categories only that that must be taken into account when we're adjudicating a visa petition and a regulation which seeks to limit the ability to adjust status on the basis of that very same employment-based immigrant petition that was the subject of Section 245K, 1255K? In other words, in Part 1 of Chevron? In other words, in Part 1 of Chevron, that it makes it clearer that the two years had nothing to do with lawful status inside, outside the U.S. Thank you very much, Your Honors. All right. Thank you. Mr. Forney, you reserve rebuttal time. Thank you, Judge Rendell. Just three brief points of rebuttal. First, very briefly, prudential standing, I don't think that can be waived. The District Court did address the issue and after Lexmark, as Justice Scalia said, there's a lot of nomenclature issues in this arena. But after Lexmark, it's no longer known as prudential standing, so any assumptions how it can be waived, I think, fall by the wayside. It really should be called statutory standing or zone of interest standing. But in any event, the inquiry is the same, whether or not Congress intended to establish a cause of action under the statute for the appellees, for example, in this case. And we've already got that point in the brief, so I don't need to label the point. Go ahead. Secondly, regarding the availability of an immigrant visa overseas, I think Clapper, the recent Supreme Court case, really addresses that issue. When you have a highly attenuated chain of contingencies that could break down at any one point, that does not establish Article III standing. And given the fact that this individual would need to wait 10 years upon their departure from the United States to even get an immigrant visa, anything could break down at that point in time. And it's just not the type of situation that is sufficient for Article III standing. Is Section 10 of the APA important to our standing analysis? The judicial review provision? No. In other words, codified at 5 U.S.C. 706? I think that's right. I just want to make sure I'm talking to the right provisions. I haven't actually looked at the original APA in a while. But I think, Your Honor, it means the judicial review provisions. The D.C. Circuit certainly has incorporated the arbitrary capricious standard under 706A2 into the second part of the Chevron analysis. And I think that analysis, given some hints from the Supreme Court recently, is probably correct. It's the same very lenient standard. It's just simply whether the agency's decision-making is reasonable. It doesn't need to be the best reading of the statute, and the court can even disagree with it. It just simply needs to be reasonable. The last point, the only real argument that the appellees have in this case is that Congress knows how to set it, or Congress set up a condition. And when they set up one condition, all other conditions are precluded. That is not any principle of administrative law that I know of, and certainly in the D.C. Circuit, which hears many of these types of agency challenges and confronts statutory interpretation and agency programs. They've rejected that paradigm completely. And we've cited those cases in our briefs, City of Barnes-Stable and Catawaba County, an EPA case, where the exact situation arose, a very similar situation arose under the statute as we have here, where there was a condition in one part not mentioned in another, and the agency was free to borrow the condition from an unrelated section of the statute. I think their main point was that carrying on is not ambiguous. Well, that certainly is their main point, because when confronted with an agency's allegation that we have an ambiguous statute, the parties most often lose, because the court owes deference to the agency at the second step. So, of course, they'll recur to Chevron step one. That's the strongest part of their case. But, unfortunately, they haven't been able to point to anything in the statute that shows that the term at issue is defined or that it's resolved in any settled manner whatsoever that would resolve the issue at step one. And you're saying that breeds ambiguity, the fact that it doesn't have a settled meaning? Well, I'm referring back to the earlier point I made, and just to be more clear, if there's no settled common law meaning, for example, in the first publication case that I mentioned, the Supreme Court said, well, under the National Labor Relations Act, for example, it could be that the term employment has a settled common law meaning, and under certain circumstances, that meaning may be imposed on the agency. But it did happen, so happened in that case, that they rejected the settled common law meaning because of other indicators in the statute that it was expected that the agency would develop a changing definition that would address facts and circumstances through the administration of the program. What about your colleague's argument that the fact that there is no definition in the regulations should in order to detriment? But the inquiry under Chevron is how the statute reads. Regulations are irrelevant. Are there no further questions? Just a couple. Does the government dispute that Alan Carr seeks to enter the U.S. solely for purposes of carrying on the vocation of a minister? I have no position on that matter because it wasn't in litigation, and I don't believe it was actually addressed in the agency's final decision, so I certainly can't opine on that because of the chain re-doctrine. That would be an ad hoc rationalization at this point. But I think that perhaps goes to John's earlier question about the relief. It would need to be remanded back to the agency because they would need to address other factors under unrelated sections of the regulation. Alan Carr may be denied on other grounds. Thank you. Thank you. All right. Thank you. Case is well argued. We'll take another advisement.